the defendant appellant in this case. In this case, the district court erred when it denied Ms. Nowlin's requested safe harbor jury instruction. In order to understand how important that instruction was to her defense, I think it's important to note the centrality of the kickback allegations that were contained throughout the indictment, in particular counts one and six. Count one, the conspiracy to commit healthcare fraud charge. There was an allegation that the false and fraudulent claims that were ultimately submitted to Medicare and Medicaid were the product of kickbacks. In the manner and means section on paragraph six, the kickbacks reference was made to the kickbacks again, in fact, throughout the indictment. So any defense that would have allowed Ms. Nowlin to negate or to show the jury that the payments were not, in fact, kickbacks were critical. And there was . . . It was charged in the language of the statute, didn't it? Yes, Your Honor. With respect to the anti-kickback statute, it was charged. Let me ask you one other thing. I thought in the charge conference, defense counsel agreed that these two guys that received money were not employees, so that charge was not necessary. I'm not sure that defense counsel agreed. I think he acknowledged, my recollection of the record is he acknowledged that there was no evidence that either Mr. Bosquez or Ms. Jackson had signed employment contracts. He did acknowledge that. When Judge Lake asked, is there any evidence that they were employees, I believe counsel for the government said there was no evidence. Mr. Esmeyer originally said we don't have any, but later he came back and rightfully and correctly informed the court that there was evidence, and that evidence was the testimony of Carla Parnell. Ms. Parnell testified that the, quote-unquote, outside salespeople all signed written contracts, employment contracts, with Yellowbone, spelling out their duties and spelling out the nature of their compensation. And I believe Exhibits 14A and 14B, which were admitted, were blank copies of those contracts. So Ms. Parnell was very clear, yes, this is the contract we used, yes, everyone signed this contract. Did counsel then re-urge the charge? I believe that he did, Your Honor, and the re-urge that he asked at the safe harbor. Can you tell us where that is in the record? Yes, Your Honor. Did they object to the charge later on? You know, ordinarily, I'm not sure how Judge Lake went around it, but did counsel object to the charge? Your Honor, I believe that he did re-urge. No, you have to be more positive about it than that. I understand. I mean, after he told him in the charge conference, we don't need it, and then he better have a pretty plain objection to that charge. I understand. And, Your Honor, at this point, I don't recall that Mr. Esmeyer made a specific objection to the charge, but I know that he did urge that the safe harbor instruction be included. And there were two charge conferences, by the way, and I believe that he re-urged it the second time. Well, the government points out in its brief or claims in its brief that you, the defendant, did not object to the failure to give this safe harbor charge, and you don't even address that in your reply brief. You never say one way or the other, which you should have. So it appears there was no objection made. That would probably depend on the record. But I would submit that the fact that Mr. Esmeyer requested the charge, that that would be sufficient. No, that doesn't do it. Our precedent is very clear. Just requesting an instruction doesn't preserve an error. You've got to object. Now, you keep talking about a sua sponte instruction. That threw me a little bit. You say that the court failed to sua sponte instruct the jury when they requested an instruction. I'm a little lost about your use of the word sua sponte. I know what sua sponte means, but you seem to conflate it with a requested instruction. Well, I think the argument there is that because there was evidence in the record sufficient to raise a fact issue as to whether or not these two individuals in particular were employees, that the court should have sua sponte included the safe harbor instruction in the charge. But you don't make that contention. You just say the court failed to sua sponte instruct because when they requested the instruction. I don't believe you raised a separate, the court should have done this on its own. Well, I think what I was attempting to communicate in the brief was that it should have been done on its own, but I would agree with you, Judge Barksdale, that it's less than clear. And what I wanted to point out, though, again, there was some evidence in the record that they were, in fact, employees. And Judge Lake seemed to put particular significance on the fact that when he was asking, is there any evidence here that they signed an employment contract? And there was, in fact, evidence to that extent that they had signed. And, again, that was through Ms. Parnell's testimony. With respect to the Fifth Amendment error, the point of error, that the prosecutor made an impermissible comment upon Ms. Nowlin's failure to testify, I know the court's familiar with that comment, the context in which that comment was made. There is one point that I think. Once again, government claims plain error. That's correct. That's correct. And you concede that. And I believe that is the correct standard. But I do want to point out, I think, the government's brief, there is one mistake that I think it's important for me to point out, and that is the government makes the claim that in our brief at page 25, that we claim that there was a contemporaneous objection by Mr. Esmeyer when Ms. Frazier made that comment. And that's, if you look at page 25 of our brief, I don't claim that it was contemporaneous. Simply, in fact, the language, I cite the exact language, Your Honor, in regard to the prosecutor's objection yesterday. So I think our brief is pretty clear. We weren't attempting to imply that there was a contemporaneous objection. There wasn't. Mr. Esmeyer came back the next morning outside the presence of the jury and made his motion for mistrial based upon that. Of course, the Griffin v. California case, the cases that talk about the standard to be applied, I think the real harm in this case is that the comment by Ms. Frazier suggested to the jury that Ms. Nowlin somehow had some type of obligation to testify, that if she was going to try to get those statements in, that she was obligated to do that. And I think it's also important to note that when Mr. Esmeyer's motion for mistrial was denied, he then requested that Judge Lake again instruct the jury about her right not to testify and that no adverse implication could be drawn from that and that the court failed to do that. And I think when the court failed to do that, in a way it magnified the error of Ms. Frazier's comment. And the government concedes in its brief, doesn't concede in any way that the comment was improper, but that the proper procedure would have been for Ms. Frazier to simply make her hearsay objection and then stop. So it's Ms. Nowlin's position that because it was a comment upon her failure to testify and because the jury could have necessarily drawn that implication from that comment, that the motion for mistrial should have been granted. With respect to the multiplicity argument— Let me ask you before you get into that. Yes, sir. Your client was also convicted on one or more social security charges, and I just want you to confirm that that's not at issue before us. I don't see it anywhere in your brief that you're challenging those convictions. It's not at issue, Your Honor. It's separate. It wasn't part of the conspiracy that was alleged in Counts 1 through 6. With respect to the multiplicity argument, the government, of course, we've cited the Morey and the Corral cases dealing with specific conspiracies subsuming or being subsumed by general conspiracies, and, of course, I know the Court's aware of those two opinions. In Corral, you had a—or I may have the cases backwards, but one of the cases involved the general conspiracy statute. The other involved a specific marijuana conspiracy. And, of course, in this case, Count 1, we have the general conspiracy statute, and then Count 6, specifically the anti-kickback statute. Now, the government has cited, I believe, that it is the Jones and the Yokey case, standing for the proposition that it's not—that the indictment was not multiplicitous based upon the holdings in those cases and, therefore, that Judge Lake did not err when he denied Ms. Nowlin's pretrial motion for dismissal based on multiplicity, I would simply wish to point out that in the Jones case, there is a factual difference between this case in that the time frame of the two conspiracies in the Jones case— Don't the charges have at least one element in one that's not required to be proved in another? Your Honor, it's our position that they don't. I know the government has alleged that in Count 6 they had to allege overt acts which weren't required for Count 1, but a fair reading of Count 1, we would submit, includes the payment of kickbacks to Mr. Bosquez and Ms. Johnson in particular. And it's our position that there's not a fact that's, of course, applying Blockburger, that there's not a different fact in— in the offense, and I think—I think our precedent's pretty clear on that. You—you referred to your safe harbor instruction issue, but in your brief you alluded to some other instructions that were refused, but you don't—you don't brief them. So is your only jury instruction issue the safe harbor jury instruction concerning Parnell? I believe multiplicity as well, Your Honor, that Mr. Esmeyer requested a multiplicity instruction, and that—because that ties in with our argument that the motion to dismiss based on multiplicity should have been granted. But it's— Now, wait. I thought you challenged the indictment on multiplicity. Mr. Esmeyer did. And the judge denied the motion. Yes, sir. I don't understand. Why there would have been a jury instruction on multiplicity? Well, at—at the second jury charge conference, Mr. Esmeyer requested that a multiplicity instruction be included, and Judge Lake correctly pointed out that he—Mr. Esmeyer had not submitted a written multiplicity instruction. So I simply feel that Mr. Esmeyer preserved the error on that point, and I wanted to argue that. But as far as the jury charge, there's no question our primary argument is the lack of a safe harbor jury instruction, because that was—that was the heart of Ms. Nowlin's defense. When that wasn't submitted to the jury, she was left defenseless. And I think it's important to note Mr. Esmeyer talked about safe harbor during his opening statement. It was discussed throughout the trial. I believe it was discussed with the case agent. There were a couple of exhibits. I believe Exhibit 18A and 18B, which was actually a printout of the statute, Code of Federal—the CFR, was a printout of that statute as well as the law. And those exhibits were admitted in evidence. Now, prior to closing argument, the government moved to have those two exhibits, the CFR, spelling out the safe harbor exemption, moved to have those excluded, that they would not be considered by the jury based upon Judge Lake's ruling that the safe harbor instruction was not going to be included in the charge. And Judge Lake granted that request by the government. But I think it's important to note the safe harbor was not just some minor defense that Ms. Nowlin threw out there. It was the heart of her defense. Mr. Esmeyer referred to it repeatedly. Your brief takes four pages urging that an obstruction of justice enhancement was erroneously applied when it wasn't applied at all. It was a major error, Judge, and I didn't want to leave here without acknowledging that. I made an error. That was a misreading. I'm embarrassed that that error is included. Well, I wish you would have at least conceded that in your reply brief. In your reply brief, you just talk about the other three. Your reply brief consistently refuses to acknowledge issues the government has raised and either concede them or challenge them. That's the whole purpose of a reply brief. Yes, Your Honor, and I absolutely acknowledge that was clearly an error and it should have been done better. I think in the reply brief, by not including the obstruction, it could have been done, and you're absolutely right, and I apologize to the court that a better job wasn't done to clear that up. The government is absolutely correct. There was not an obstruction of justice enhancement. It was just a poor reading of the record. With that, I believe my time is almost up unless there are any other questions. Okay, thank you. May it please the court, Loretta Berry for the United States. With respect to the safe harbor instruction, I think it's important to clarify for the court that the sua sponte issue as the way the government briefed it was in response to their issue that Parnell was, that the safe harbor instruction was supposed to be given as to Parnell. Now, that was raised for the very first time in their brief. That was never alleged at trial that the safe harbor instruction should have been given as to Parnell. So that is why the government's brief raised it, responded that it was plain error as to Parnell. With respect to Bosquez and Johnson, Nowland's brief does not . . . Was it ever suggested to the judge that, well, Your Honor, it's incumbent upon you to give this sua sponte? No. No, Your Honor. It was not. Well, does Judge Lake give an opportunity to object to the charge just before the jury goes out? Or, you know, most commonly the procedure I've seen is they retire the jury, and at that point the judge asks any objections to the charge. Well, I believe there was a full conference about the jury instruction, Your Honor, as it related to Johnson and Bosquez, and Judge Lake gave them a full opportunity to argue about the instruction for safe harbor, so I believe that it was preserved as to those two. It wasn't preserved in their brief, Your Honors, because they only limited their argument as to Parnell, that the instruction should have been given as to Parnell. But because we're discussing it here today, it was proper that Judge Lake deny the instruction as to those two individuals under the Darden factors. Those two individuals testified that they exercised discretion over the manner and means in which they worked. They testified that there were no tax withholdings on the money that they received from Nowland. And it's important to note, Your Honors, that although defense counsel states here today that contracts were introduced, he also concedes those contracts were unsigned, and that is absolutely correct. There were no signed contracts that were introduced into evidence that established that Parnell, that established that Johnson and Bosquez were bona fide employees and entitled them to the safe harbor instruction. Moreover, they both testified they were paid on commissions. Bosquez specifically testified that he went and picked up his commission checks from Parnell after they were signed by Nowland. That wouldn't refuse the fact that they were employees, would it, the fact they were paid on commission? Absolutely it would, Your Honor. That's one of the factors in Darden. You cannot be paid on commission. These people were—all of the factors in Darden are—at least four of them are evident here. They exercised their own discretion over the manner and means in which they worked. That was not controlled by Parnell or by Nowland. There was no withholding on their tax returns. They signed no contracts for employment. All of those factors are required in order to be entitled to the bona fide employee exception, which is a very restrictive exception, and those factors are not evident in this case. And Judge Lake was correct in denying the instruction as to them. With respect to multiplicity, before I get to that, defense counsel states that a multiplicitous instruction should have been given. That's a separate issue from the motion to dismiss the indictment for multiplicity grounds. And it was not briefed in their brief sufficiently for the government to respond to an instruction for multiplicity, multiplicitous. Was your request made for that instruction? It was made in one of the filings, Your Honor, but, again, it was not fully briefed in that either. I don't have the record site, but it was—it tracks pretty much the brief that was filed. It's almost identical. With respect to multiplicity— The brief that was filed in support of the motion to dismiss the indictment or dismiss at least two counts in the indictment. Yes, I believe it was. With respect to multiplicity— No, counsel, I think you know this record pretty well, but every time you use the word believe, it kind of weakens what you're telling us. So if you're certain, don't use believe. Okay. Believe raises a red flag. Sorry. Okay. With respect to multiplicity, the motion to dismiss the indictment, the issue—the case that controls this issue in Snujoku, where this court examined the exact statutes that are in play here, 1349, which is the conspiracy to violate the health care fraud or conspiracies to commit health care fraud, and also under 371, which is the general conspiracy statute. This court examined both of those and held that there were distinct conspiracies, distinct convictions that involved separate elements, and therefore, there was no multiplicity. In addition, under 371, overt acts are required. Therefore, there's no error in multiplicity, in the issue on multiplicity. With respect to prosecutorial misconduct, I understand that defense counsel concedes the correct standard is plain error review, but I'd like to urge the court to look at their brief. The government did not make a mistake by arguing that there was a no contemporaneous objection. It's very important to look at page 25 of their brief, the way that it is laid out, because the way it's written cites to page 1255 as being all a contemporaneous objection to the prosecutor's remark, and that, in fact, did not occur. The prosecutor made her remark, and defense counsel immediately stated for the court that he wanted to rephrase the question, and he continued on questioning this witness for 30 pages of transcript. After that, there was a bench conference, and the defense counsel never raised the objection. The following morning, defense counsel raised the objection. But the way that it's laid out in their brief, it looks like a contemporaneous objection was made by the way that it's laid out, and, most importantly, by the record cite. So there was no error in the government's brief. Quickly addressing the two standards under gross, there's no manifest intent on this record to establish that the prosecutor intended to comment on Nowland's failure to testify. The context is equally plausible that a hearsay objection was made. Defense counsel crossed the officer on the 2006 report that was prepared by another officer that contained a summary of yet another officer, and, in fact, defense counsel referred to this as a report on the report. After two questions, the prosecutor made her hearsay remark. She continued to make hearsay remarks for several more questions thereafter. The jury would definitely not necessarily construe this as an improper remark. It occurred very early in the trial, on day two of seven days. It was the United States' third of 19 witnesses. It was an isolated comment. It was not a direct comment on the defendant, unlike in this court's holding in Griffith, where the defense counsel turned to the defendant during closing argument, excuse me, when the prosecutor turned to the defendant during closing argument and stated, would you like to take the stand and testify? There's nothing like that in this case. It occurred during the government's case in chief, and there was no indication that Nowland was going to testify. In fact, the defense counsel only informed the court on day five that Nowland was not going to testify. There's no adverse effect on Nowland's substantial rights. The context was isolated. It was not direct, and there's overwhelming circumstantial evidence in support of guilt in this case, which has not been challenged today during oral argument. If there's no further questions, I respectfully request that the judgment be affirmed. Thank you. Thank you very much, Ms. Bower. Okay, Mr. Hughes, back to you. The only thing I would add is that with respect to the government's argument that Ms. Nowland has somehow waived her argument that the safe harbor instruction should have been given with respect to Mr. Bosquez and Ms. Johnson, I point out in our brief summary of arguments, we state the district court erred in refusing to use Nowland's proposed safe harbor jury instruction. It was an abusive discretion by the district court not to include the safe harbor instructions in the charge. In this case, the district court erred in refusing to use Nowland's proposed safe harbor jury instruction. And finally, the district court refused to incorporate Nowland's proposed safe harbor jury instruction in its charge to the jury. As such, the district court erred. So we take issue with the government's claim that somehow, by the way this issue was briefed, that we've waived. I'm not real sure, and I'm sure we've got some precedent on it. I'm not real sure what you state in the summary of the argument preserves an issue. Well, it is. The argument section is where you're supposed to present arguments and not only raise an issue, but cite to the record and cite some authority for it. And it's in the argument section as well, Your Honor. No. Page 14 and page 17. And that's all I have unless there are any other questions. Thank you very much. Thank you. Thank you, Counsel. We have your case.